UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY RADFORD,

                Plaintiff,        Civil Action No. 14-10831
                                      Honorable Robert H. Cleland
                                      Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [9, 10]**

Plaintiff Kimberly Radford ("Radford") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [9, 10] which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Radford is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [10] be GRANTED, Radford's Motion for Summary Judgment [9] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II.     REPORT

### A.     Procedural History

On April 14, 2011, Radford filed applications for DIB and SSI, alleging a disability onset date of February 28, 2008. (Tr. 157-66). These applications were denied initially on September 12, 2011. (Tr. 77-84). Radford filed a timely request for an administrative hearing, which was held on September 21, 2012, before ALJ John Dodson. (Tr. 32-48). Radford, who was represented by attorney Aaron Lemmens, testified at the hearing, as did vocational expert Elizabeth Pasikowski. (*Id.*). On November 1, 2012, the ALJ issued a written decision finding that Radford was not disabled. (Tr. 18-27). On December 20, 2013, the Appeals Council denied review. (Tr. 1-4). Radford filed for judicial review of the final decision on February 21, 2014. (Doc. #1).

### B.     Framework for Disability Determinations

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months,

> and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.    Background**

*1.    Plaintiff's Reports and Testimony*

At the administrative hearing, Radford testified that she had not worked since January of 2009. (Tr. 195). She lived in a house with her daughter, son-in-law, and two grandchildren. (Tr. 44, 203). Radford testified that she suffered a head injury while working, after which she has experienced headaches. (Tr. 36, 43). She indicated that she also suffers from chronic obstructive pulmonary disease ("COPD"), carpal tunnel syndrome, and fibromyalgia, leaving her with "constant pain" in her neck and shoulders that is a 6 or 7 out of 10 on the pain scale. (Tr. 36, 195). According to Radford, she experiences "flare ups" a couple of days a week where her pain is an 8/10. (Tr. 36-37). Her carpal tunnel syndrome makes it difficult to pick up items, open jars, and type. (Tr. 37-38). She is able to lift 10-15 pounds and sit for 15-30 minutes at a time. (Tr. 38-39). She is able to prepare meals; shop for food and clothing; and take care of housework, including washing dishes, dusting, sweeping, and vacuuming. (Tr. 38, 205-06). She

3

has no trouble with personal care. (Tr. 44, 204). She indicated that she previously enjoyed playing tennis and softball, biking, and gardening, but can no longer participate in these activities. (Tr. 38-39, 204). She does not drive because she does not have a driver's license. (Tr. 43, 206). She has difficulty sleeping at night because of pain. (Tr. 39). Radford testified that she also suffers from depression and anxiety, and she does not want to go outside or be around people. (Tr. 39). However, in her function report, she indicated that she talks to others on the phone every day. (Tr. 207). She indicated that her memory is "not good," and she has difficulty focusing and concentrating (although she is able to finish what she starts). (Tr. 40-41, 208). In addition, Radford testified that she has difficulty breathing because of her COPD and, therefore, has difficulty climbing stairs. (Tr. 42).

    2. *Medical Evidence*

  The Court has thoroughly reviewed Radford's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

    3. *Vocational Expert's Testimony*

  Elizabeth Pasikowski testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 45-47). The ALJ asked the VE to imagine a claimant of Radford's age, education, and work experience, who could perform light work, with the following additional limitations: no more than frequent bilateral handling; no concentrated exposure to pulmonary irritants such as dust, odors, fumes, gases, or poor ventilation; only occasional superficial contact with the public; only occasional interaction with coworkers and supervisors; and no work requiring production-like standards, such as an assembly line or a conveyor belt. (Tr. 45-46). The VE testified that the hypothetical individual would not be capable of

performing Radford's past relevant work. (Tr. 46). However, the VE testified that the hypothetical individual would be capable of working in the jobs of visual inspector (3,300 jobs regionally), hand packer (1,700 jobs), and information clerk (1,400 jobs). (*Id.*).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Radford was not disabled under the Act. At Step One, the ALJ found that Radford did not engage in substantial gainful activity after February 28, 2008 (her alleged onset date). (Tr. 20). At Step Two, the ALJ found that Radford had the severe impairments of COPD, fibromyalgia, reflux, and depression. (*Id.*). At Step Three, the ALJ found that Radford's impairments, whether considered alone or in combination, did not meet or medically equal a listed impairment. (Tr. 20-22).

The ALJ then assessed Radford's residual functional capacity ("RFC"), concluding that she was capable of performing light work, with the following additional limitations: no more than frequent bilateral handling; no concentrated exposure to pulmonary irritants such as dust, odors, fumes, gases, or poor ventilation; only occasional superficial contact with the public; only occasional interaction with coworkers and supervisors; and no work requiring production-like standards, such as an assembly line or a conveyor belt. (Tr. 22-25).

At Step Four, the ALJ determined that Radford was unable to perform her past relevant work. (Tr. 25-26). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Radford was capable of performing a significant number of jobs that existed in the national economy. (Tr. 26-27). As a result, the ALJ concluded that Radford was not disabled under the Act. (Tr. 27).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative

decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v.*

*Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.     Analysis**

   *1.     Waiver*

It is difficult to discern Radford's specific arguments in support of her motion for summary judgment. Her motion consists almost entirely of a compilation of quotations of black letter case law, with virtually no accompanying analysis or application of that law to the facts of her case. For example, Radford asserts (in a heading in her brief) that the ALJ erred in "failing to properly evaluate the medical records and opinions of evidence, and thereby, formed an inaccurate hypothetical that did not accurately portray [her] impairments." (Doc. #9 at 7). But, Radford does not explain with any particularity whatsoever which medical records or opinions the ALJ purportedly "fail[ed] to properly evaluate." (*Id.*). Indeed, Radford's motion lacks any mention of the medical evidence of record, let alone a meaningful discussion of the implications of such evidence. There is simply no suggestion that the ALJ overlooked any medical evidence or erred in considering such evidence. Rather, Radford relies entirely on her own testimony (*id.* at 9-10), which the ALJ is required to *weigh* as part of his overall analysis, not blindly accept, as

7

Radford suggests.

Radford's brief is very similar to one her counsel filed in another matter, *Burger v. Comm'r of Soc. Sec.*, 2013 WL 2285375 (E.D. Mich. May 23, 2013), which the court found to present no non-waived issue. And, on March 24, 2014, Judge Rosen issued a scathing commentary on Radford's counsel's approach to his clients' summary judgment briefs:

> … [T]his reliance on conclusory assertions and absence of developed argument has become the calling card of Plaintiff's counsel in a number of recent Social Security cases, and nearly every Magistrate Judge in this District has expressed this concern with the work product of Plaintiff's counsel. In light of this lamentable record of filing one-size-fits-all briefs and inviting the Judges of this District to formulate arguments and search the record on his clients' behalf, Plaintiff's counsel is strongly cautioned that this Court will carefully examine his submissions in future suits to ensure that they advance properly supported arguments that rest upon (and cite to) the facts of a particular case. Failure to adhere to these standards will result in the imposition of sanctions and possible referral of counsel for disciplinary proceedings.

*Fielder v. Comm'r of Soc. Sec.*, 2014 WL 1207865, at *1, n. 1 (E.D. Mich. Mar. 24, 2014) (internal citations omitted). The Court notes that Radford's brief in this case – which was filed <u>after</u> issuance of the *Fielder* opinion – is yet another "one-size-fits-all" brief, containing virtually the same "conclusory allegations" and "absence of developed argument" that Chief Judge Rosen found wholly insufficient in *Fielder*. Here, then, the Court could find that Radford has waived any challenges she has to the ALJ's determination. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotations omitted). Nonetheless, for the sake of completeness, the Court will endeavor to address the only argument alluded to by Radford – that the ALJ erred in analyzing her credibility.

### 2. Credibility

Apart from citing to boilerplate case law concerning the ALJ's obligations in relying on

8

VE testimony and assessing medical source opinions – without making *any* attempt to connect that law to the facts of this case – the only "argument" Radford advances (which is not even mentioned in the single heading contained in her brief) is that the ALJ erred in declining to fully credit her testimony that she had work preclusive limitations. (Doc. #9 at 9-10). In making this assertion, Radford ignores the reasons articulated by the ALJ for discounting her credibility and does not cite any medical evidence that the ALJ failed to properly consider. As set forth below, the ALJ reasonably discounted Radford's allegations of disabling limitations because they were inconsistent with the objective medical evidence and the record as a whole. (Tr. 22-25).

As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of her symptoms are credible. *Soc. Sec. Rul.* 96-7, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. §404.1529.

Here, the ALJ adequately discussed the objective medical evidence regarding Radford's impairments and reasonably explained why such evidence compelled a finding that Radford's allegations of disability were not fully credible. (Tr. 23-25). For example, the ALJ noted that in January 2008, Radford presented to her family practitioner with complaints of shoulder pain. (Tr. 23, 258). An x-ray of her shoulder was negative, however, and an x-ray of her cervical spine revealed only mild degenerative changes. (Tr. 23, 272). The ALJ also noted that Radford was next seen on February 20, 2008. (Tr. 23, 265-66). At that time, Radford did not complain of any shoulder pain, and her physical and mental examinations yielded no abnormal findings. (Tr. 265-66). As the ALJ noted, a chest x-ray performed the same day revealed only mild COPD. (Tr. 23, 274). And, x-rays of Radford's hips performed the following week were normal. (Tr. 23, 275). After these x-rays – which were performed in February 2008 – the ALJ correctly noted that Radford did not seek significant medical treatment in 2008, 2009, or 2010.[1] *See* S.S.R. 96–7p ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . .").

On March 28, 2011, Radford complained of bilateral leg pain, which she indicated was a 10/10 on the pain scale. (Tr. 285). An objective examination was mostly normal, however. (Tr. 285-86). On August 1, 2011, Radford returned to her primary care physician, complaining of pain in her back, neck, and fingers, as well as trouble breathing with mild exertion. (Tr. 336). She was started on Cymbalta for fibromyalgia and given an inhaler for her shortness of breath. (Tr. 337). Pulmonary function testing also was ordered to evaluate her breathing issues, which revealed a moderate degree of airway obstruction with a significant bronchial asthma

---

[1] A chest x-ray was performed on March 31, 2009, which continued to reveal mild issues, similar to those seen the previous year. (Tr. 276). And, ANA testing was performed in April 2010, when Radford complained of pain and numbness on the left side of her head; this testing was negative, however. (Tr. 293, 295).

component. (Tr. 317). However, Radford's pulmonary function normalized after treatment with a bronchodilator. (*Id.*). *See* 20 C.F.R. § 404.1529(c)(3) (ALJ should consider effectiveness of medication and other treatment on pain and other symptoms).

As the ALJ noted, Radford attended a consultative examination with Dr. Samiullah Sayyid on August 2, 2011. (Tr. 24, 303-09). Radford reported to Dr. Sayyid that she suffered from COPD, fibromyalgia, and carpal tunnel syndrome. (Tr. 303). She claimed to have pain all over her body, but reported that the only medication she took was ibuprofen. (*Id.*). Radford's physical examination yielded mostly normal results. (Tr. 24, 304). The only abnormalities were bilateral diminished breath sounds with occasional rhonchi and reduced bilateral grip strength. (Tr. 24, 304, 306-09).

On November 29, 2011, Radford returned to her primary care physician, complaining of aches and pains in her arms and legs and hand numbness, as well as a cough with wheezing. (Tr. 332). She was provided with medication to treat her myalgias, and it was noted that she also received medication for depression and anxiety. (Tr. 333).

On July 19, 2012, Bradford began treating at the Clio Health Center for joint pain symptoms, anxiety/depression, COPD,[2] and reflux disease. (Tr. 24, 341). She denied any cough, shortness of breath, or chest discomfort, however, as well as any muscle weakness or loss of strength. (Tr. 344). On examination, she was alert and oriented, in no acute distress, and had only mild wheezing. (*Id.*). She was advised to continue to use her inhalers, as needed; was referred to pain management; and was referred for a psychiatry consult for her ongoing anxiety and depression. (Tr. 344-45).

In light of the foregoing evidence, the ALJ's RFC finding adequately accommodated

---

[2] At this visit, Radford admitted that she continued to smoke and was again advised to quit. (Tr. 24, 343).

Radford's physical and mental impairments. (Tr. 22-25). The ALJ concluded that, during the relevant period of time, Radford was capable of performing light work, with the following additional limitations: no more than frequent bilateral handling; no concentrated exposure to pulmonary irritants such as dust, odors, fumes, gases, or poor ventilation; only occasional superficial contact with the public; only occasional interaction with coworkers and supervisors; and no work requiring production-like standards, such as an assembly line or a conveyor belt. (*Id.*). Radford has pointed to no medical evidence justifying greater limitations than those the ALJ identified.

Rather, in the face of all of this substantial evidence, Radford relies primarily on own her testimony and her subjective complaints to physicians. (Doc. #9 at 9-10). However, even where there is "objective medical evidence of an underlying medical condition … an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r. of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). In sum, while Radford might disagree with the ALJ's credibility assessment, she has failed to articulate a basis for overturning that finding, particularly in light of the great weight and deference an ALJ's credibility finding is due on review. *See Kirk,* 667 F.2d at 538; *Smith*, 307 F.3d at 379 (ALJ's credibility determination will not be disturbed "absent compelling reason"). Here, where the ALJ gave a reasonable explanation for discounting Radford's credibility, and that explanation is supported by substantial evidence, his credibility finding should not be disturbed.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Radford's Motion for Summary Judgment **[9]** be **DENIED**, the Commissioner's Motion **[10]** be **GRANTED**, and this case be **AFFIRMED**.

Dated: December 1, 2014                              s/David R. Grand
Ann Arbor, Michigan                                  DAVID R. GRAND
                                                     United States Magistrate Judge


### REVIEW

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  *See* E.D. Mich. L.R. 72.1(d)(2).

*Note these additional requirements at the direction of Judge Cleland:*

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response

must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

## CERTIFICATE OF SERVICE

     The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 1, 2014.

                                            s/Eddrey O. Butts  
                                            EDDREY O. BUTTS  
                                            Case Manager